# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1640V
UNPUBLISHED

| | |
|---|---|
| ANITA MASTERS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: December 18, 2023 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On November 23, 2020, Anita Masters filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received in her left shoulder on October 30, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Fact Ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, I find that a preponderance of evidence supports the conclusion that the flu vaccine alleged as causal was administered in Petitioner's left deltoid, and that her pain and reduced range of motion were limited to that same shoulder.

## I.     Relevant Procedural History

As noted above, the case was initiated in November 2020. More than a year later, on December 15, 2021, Respondent filed a status report stating that he was willing to entertain settlement discussions, and although they entered into discussions, no terms could be agreed upon. ECF Nos. 23, 29.

Accordingly, on July 11, 2022, Respondent filed a Rule 4(c) Report disputing Petitioner's entitlement to a Vaccine Program award. Respondent's Report at 1. ECF No. 30. Noting that "[t]he vaccination record . . . provides no information as to which arm [P]etitioner received the vaccine," Respondent argued that Petitioner had not established the site of vaccination. *Id.* at 7. Respondent also maintained that the Table criterion that pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered has not been met because "she reported radiating shoulder pain and new left lateral cervical spine pain with an associated soft tissue 'knot.'" *Id.* at 8.

In a Scheduling Order filed on August 4, 2021, I expressed the view that based on a review of the existing record, a hearing would not be necessary, and that I intended to issue a fact finding as to the site of vaccine administration and limitation of Petitioner's range of motion after providing the parties an opportunity to file briefs and any evidence they wish to have considered. ECF No. 31. On September 19, 2022, Petitioner filed a Motion for a Ruling on the Record. ECF No. 32. On November 2, 2022, Respondent filed a response brief. ECF No. 33.

## II.    Issue

At issue is whether (1) Petitioner received the vaccination alleged as causal in her left arm; and (2) Petitioner's pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered. 42 C.F.R. §100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. §100.3(c)(10)(iii) (pain and range of motion limited to vaccinated arm requirement).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis,

2

conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

3

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

I have reviewed all the records filed to date. This ruling, however, is limited to determining the site of vaccine administration and the scope of Petitioner's symptoms. Accordingly, I will only summarize or discuss evidence relevant to the resolution of those issues.

- Petitioner was administered the flu vaccine on October 30, 2018 at a Walgreens pharmacy. Ex. 1 at 4-6. The record of vaccination does not indicate the site of vaccination.

- On July 9, 2021, Petitioner's coworker, Robin Mackiernan, submitted an affidavit stating that on October 31, 2018, "[Petitioner] was complaining of soreness in the left arm at the site of injection." Ex. 7 at 1.

- On November 5, 2018 (six days post-vaccination), Petitioner saw with her primary care physician for concerns related to her cervical spine, coccyx, and a six-day history of post-vaccination shoulder pain. Ex. 2 at 8. Although the medical record does not state whether Petitioner specially complained of discomfort on her right or left side, a physical exam revealed difficulty lifting her left arm overhead. *Id.* at 9. Petitioner's assessments included neuropathy with a suspected left arm nerve injury from injection. *Id.*

- On April 17, 2019 (approximately five-and-a-half months post-vaccination), Petitioner saw Dr. Harold Antwine at West Tennessee Bone and Joint Clinic for coccydynia as well as "long-term" pain in the left shoulder. Ex. 3 at 16. The medical note reflects that Petitioner attributed this symptom to "a flu shot back in October 2018." *Id.* Petitioner was assessed with "left shoulder pain, status post injection from a flu shot" and was referred to physical therapy. *Id.*

- Petitioner participated in a total of eleven sessions of physical therapy for her left shoulder between May 9, 2019 and June 10, 2019. Ex. 3 at 18-29; 35-48.

- On June 12, 2019, Petitioner returned to West Tennessee Bone and Joint Clinic for a follow up visit. Ex. 3 at 30. Petitioner was found to have "near full range of motion of the left shoulder," but was assessed with "left shoulder pain, rotator cuff

4

syndrome, improved." *Id.* The medical note reflects that Petitioner had no symptoms in her right shoulder. *Id.*

- Petitioner returned to West Tennessee Bone and Joint Clinic on October 9, 2019 for a "recheck" of her left shoulder. Ex. 3 at 49. A physical examination revealed pain with attempted abduction beyond 90 degrees, positive impingement, and decreased internal rotation. *Id.* Petitioner was assessed with chronic left shoulder pain, impingement, bursitis, and tendinitis. *Id.* In addition, Petitioner underwent an ultrasound-guided steroid injection in her left acromial space and was advised to begin a second round of physical therapy. *Id.*

- On October 15, 2019, Petitioner underwent a second initial physical therapy examination at West Tennessee Bone and Joint Clinic for her chief complaint of "Lt. shoulder impingement/bursitis." Ex. 3 at 76-78. Petitioner returned for seven additional visits through November 5, 2019. *Id.* at 50-56, 67.

- Petitioner returned to West Tennessee Bone and Joint Clinic on November 5, 2019. Ex. 3 at 57. An examination of Petitioner's left shoulder revealed near full range of motion and some discomfort with extremes in range of motion. *Id.* Petitioner was assessed with left shoulder pain and inflammation. *Id.*

- On December 19, 2019, Petitioner underwent left shoulder arthroscopy with major synovectomy, debridement of a superior labral tear, subacromial decompression with a complete bursectomy, and debridement of a bursal-sided partial rotator cuff. Ex. 3 at 63-64.

- On December 30, 2019, Petitioner attended a post-operative initial physical therapy evaluation at Patterson Physical Therapy. Ex. 4 at 50-51. The note documenting this appointment indicates that Petitioner "[r]eceived a flu shot at Walgreens in the L[eft] arm in 10/2018. Pain was excruciating immediately." *Id.* at 50. Petitioner returned for an additional thirteen sessions of physical therapy through March 12, 2020. *Id.* at 7- 44.

- Petitioner returned to West Tennessee Bone and Joint Clinic for post-operative visits on January 7 and on February 13, 2020. Ex. 3 at 7, 66. On February 13, 2020, Dr. Antwine noted Petitioner's occasional discomfort with left shoulder abduction and recommended continued physical therapy. *Id.*

5

- On May 28, 2020, Petitioner saw her primary care physician for a biopsy of a neoplasm on her back. Ex. 2 at 4. In the review of symptoms, the physician noted "right sharp shoulder pain has resolved but still left is not normal." *Id.*

- Petitioner completed four sessions of physical therapy for her left shoulder between June 4 and July 21, 2020. Ex. 9 at 3-16.

A. *Site of Vaccination*

The above-referenced evidence supports a finding that the vaccine at issue was likely administered in Petitioner's left deltoid. In the context of seeking care, Petitioner consistently sought and received treatment for left shoulder pain and attributed such symptoms to vaccination. *See, e.g.,* Ex. 3 at 16 (April 17, 2019 orthopedic note reflecting Petitioner's attribution of her shoulder pain to "a flu shot back in October 2018"); Ex. 3 at 18-29; 35-48 (documenting Petitioner's participation in physical therapy for left shoulder symptoms between May and June 2019); Ex. 3 at 63-64 (December 19, 2019 operative report detailing Petitioner's left shoulder arthroscopy). Moreover, the record of Petitioner's November 5, 2018 primary care visit – the first record in which she complained of post-vaccination shoulder pain – is particularly persuasive. Although the medical note does not indicate whether Petitioner cited discomfort in her left or right shoulder, she was noted to experience difficulty lifting her left arm overhead and was assessed with a suspected left arm nerve injury from injection. Ex. 2 at 8-9. This record is from only six days after vaccination, and is the most contemporaneous record other than the vaccine administration record itself.

I acknowledge that the vaccine record *itself* does not set forth the site of vaccination. However, all other medical records filed in this case and bearing on Petitioner's post-vaccination treatment support a finding that the vaccine was administered in Petitioner's left arm, and Petitioner's statements amplify reasons to find this to be the case. I therefore find it more likely than not that the vaccination alleged as causal in this case was administered to Petitioner in her left deltoid on October 30, 2018.

B. *Scope of Pain and Limited Range of Motion*

Respondent argues that even if "[P]etitioner successfully demonstrates that she received the subject vaccine in her left arm," her Table claim must fail because her symptoms were not limited to this region of her body. Response at 9. He asserts that "[d]uring [P]etitioner's initial medical visit . . . she reported radiating shoulder pain and new left lateral cervical spine pain with an associated soft tissue 'knot.'" Respondent's Report at 9-10.

I find, however, that (for purposes of the Table SIRVA claim), a preponderance of evidence supports the conclusion that Petitioner's injury was limited to her left shoulder, even if symptoms elsewhere were documented. It is true that Petitioner reported left shoulder pain that "radiates/aches" and that she separately reported achiness and soreness in her neck. Ex. 2 at 8. But the records reveal that this was the only time she described neck pain and radiating symptoms. Further, Petitioner's left shoulder was the focus of her complaints and the resulting diagnoses. *See, e.g.*, Ex. 3 at 16 (April 17, 2019 orthopedic note indicating that Petitioner was assessed with "left shoulder pain, status post injection from flu shot").

And as noted above, the medical records reflect that Petitioner's treatment was focused on her shoulder symptoms. *See* Ex. 3 at 18-29; 35-48 (May 9 – June 10, 2019 physical therapy notes documenting treatment for Petitioner's left shoulder symptoms); Ex. 3 at 49 (October 9, 2019 orthopedic note describing the administration of a steroid injection into Petitioner's left shoulder); Ex. 3 at 63-64 (December 19, 2019 operative report detailing Petitioner's left shoulder arthroscopy). Pain that is not reasonably associated with Petitioner's SIRVA can be disregarded in determining damages in this case.

Accordingly, preponderant evidence establishes that Petitioner's pain was sufficiently "limited" to her left shoulder.

## V.     Scheduling Order

Given my finding of fact regarding the site of vaccine administration and the scope of Petitioner's symptoms, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case. Respondent shall file, by no later than **Tuesday, January 16, 2024**, a status report concerning how he intends to proceed.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

7